The next case today is FinSight I LP v. Robert Seaver et al, appeal number 221141. Attorney Piedra, please introduce yourself for the record and proceed with your argument. Good morning and may it please the court, Attorney Israel Piedra for the appellant FinSight I LP. Judge Lynch, with your permission, I would like to reserve two minutes for rebuttal. Yes, you may have it. Thank you. Your Honors, there are questions of material fact in this case which should have precluded summary judgment below, and the district court therefore erred in granting it. First, there is a question of fact about whether a binding contract was formed between the parties in the first place. The district court found, as a matter of law, that there was not. The central question is whether a contract was formed despite the lack of signature from the company that held the stock, Unity. And one of two results should have been possible there. One is that the contract is unambiguous on its face, and the intent of the parties can be discerned as a matter of law from the document itself. Second is that the contract is ambiguous as it relates to the party's intent, and in that case, extrinsic evidence would be relevant and admissible to determine the party's intent. And the issue in that situation becomes a question of fact. Now, the district court erred in two ways on this issue. First, it relied on extrinsic evidence, namely an email by FinCite's general counsel, without first finding that the contract itself was ambiguous as to the party's intent. And then even assuming that the court had made that required preliminary finding of ambiguity, it should have at that point denied summary judgment because the intent of the parties became a jury question at that point. And instead, what the court did was it gave dispositive effect to a piece of extrinsic evidence and improperly engaged in fact-finding in doing so. Counsel, I don't mean to be rude, but you have very limited time, and I'd like you to use at least some of your time and talk about whether or not the termination within seven days, I think it's Article 3.1, even if we assume that there was a contract formed, whether or not that right of termination was properly exercised. Thank you, Your Honor. Of course. So our position is that there was a termination right. That is, I think, clear. However, it was only exercised after the sellers had already breached the contract, and their subsequent termination does not excuse that breach of contract. Basically, once Unity had approved the transfer, which happened prior to the purported termination, all the conditions precedent of the agreement had been met at that point, and the sellers were obliged to perform their part of the bargain. The contract doesn't say that. The contract says that there is a seven-day window, and if that seven-day window doesn't produce a signed agreement, it seems to give the sellers a right to terminate. Now, I can see that there might be in some cases an argument that the sellers did something within the seven days that blocked the consummation of the contract or something like that. That's not the argument that you're making. Just on the plain language of the contract, I'm struggling with the notion that that seven-day window closes. A right now desks in the sellers to terminate, and you say that something that they did subsequently creates a breach that then snatches the right back from them. And I'm having difficulty following the legal basis for that theory. Sure. So our position is that the contract in Section 2.1 specifically obligates the parties to close on the deal once certain conditions are met. Now, I'm not denying that there's a termination right after seven days, but it's not an automatic kill switch. It obviously has to be invoked by the sellers still to terminate that deal. But there's no time limit on the invocation. Correct, and I don't disagree that 30 days later, approximately when they invoked the termination clause, they did still have that termination right at that point. That's not the argument we're making. We're saying that once these preconditions were met, which they were, prior to that termination right being invoked, the contract says the parties shall close the deal, at which point the sellers had to proceed with the contract, performing their part of the contract and transferring the shares. When they did not, they breached the contract, and their subsequent invocation of that termination clause does not cure their breach. It's not an exculpatory position. Was there some request or demand for closing that they ignored or stonewalled? There was, Your Honor. So I don't have the exact record site, but it is in the opening brief in our recitation of facts. My client, FinCite, did demand that closing occur before this termination clause was invoked. Mr. Piedra, pardon me, but the way I read your briefs, you were making a textual argument that the seven-day right to terminate was, although the text does not say that, was dependent on a condition precedent of the prior clause, which you say required them to close the contract. In response to Judge Selya, you seem to have conceded the textual argument is incorrect, and you seem instead to go back to some form of state law breach of contract notion. I really am unclear about what you are arguing, and if you are arguing the latter, where in Massachusetts law do you find that we can ignore the clear text of a contract? So, Your Honor, there are basically two arguments that we've made that are essentially the same or closely related in that the precedent of these arguments is that the seller, or the foundation of the arguments is that the seller breached the contract prior to asserting the termination right. We've kind of made two similar arguments. One is that that breach prevented them from exercising the termination right because of the text of the contract itself, and the second is that regardless of whether they had the right still to exercise that clause at that point, their prior breach entitles the sit-in site to damages regardless of whether that termination right is subsequently invoked. And we've cited cases not from Massachusetts. Again, I think both sides have essentially implicitly argued that Delaware law applies, but in either case, we don't have explicit language to that point from case law from either state, but what we do have is citations from other jurisdictions that talk about these termination for convenience clauses. Five minutes remaining. Five minutes. So, if I've understood your argument, you want courts to disregard the plain text of a contract and hold that the courts should find some sort of implicit meaning which is not provided by the plain text of the contract. Normally, at least applying state contract law principles, we leave the parties to how they have drafted the contract, and there was other language which might have accomplished the ends that you are now urging on us, but that is not what the contract says. So, why should we go in the direction that you want us to go in when there is no Massachusetts case which would approve of that? So, I think I should clarify our argument because I disagree. So, I look at it in two ways. So, first of all, I think we agree, obviously, a breach of contract gives rise to a claim for damages. In fact, every breach of contract gives rise to a claim of damages unless there is some contractual clause to the contrary which says that the parties limit their liability or exculpate themselves under certain circumstances. That is restatement law. So, that is kind of the first prong of our argument that once that breach occurs, a party is entitled to damages. Let me follow through with you, counsel. As I understand your argument, you are saying that you are entitled to maintain that action for breach of contract even if the right to termination vested in the sellers and even if the sellers terminated the contract, that the action for breach is an independent course of action. Correct, your honor. But I have a couple of questions about that. Did you make that argument in the district court? Because I can't find anything in the district court papers that indicates that you made that argument. So, the argument below and on appeal... I asked a very simple question. It seems to me it's a yes or no answer. You either made that argument in the district court or you didn't. The argument has always been that they breached the contract prior to invoking the termination right. But did you make the argument that you can continue, that the action for breach lies regardless of whether their termination is valid? I believe so, your honor. I was not trial counsel. I believe so. All right. Was that argument made in your opening brief in this case? You made it explicitly in your reply brief, but I can't find it in your opening brief. Again, I consider it to be under our opening brief on page 40. We say the district court erred in failing to consider whether Sellers had breached the agreement prior to asserting the termination right. To me, that encapsulates our argument. But that's a little different, because that doesn't go on to say that even if you find the termination valid, that's the unusual twist in your argument. An action for breach can be maintained even if the termination is valid. And the only time I can find the record where you've made that argument face up and squarely is in your reply brief in this court. All I can say, your honor, is that in my opinion, that argument is subsumed within the language that I just quoted. Okay. So I will go on to say, and I'm probably running out of time here, but the second piece of this argument is we still need to prove that those closing conditions were met in order for that breach of contract to have occurred. The district court didn't consider this, but as we argued in our briefs, we do believe it's a question of fact whether unity's approval of the agreement was sufficient to satisfy that condition precedent. There is some argument about whether the materiality of the agreements were similar enough. Again, I think that's a question of fact because it depends on the party's intent. So in sum, the district court should have found questions of material fact precluded summary judgment in this case, and we'd respectfully ask for a reversal and remand. Thank you, counsel. Thank you, Attorney Pietra. At this time, if you could mute your audio and video. Attorney Kirby, please introduce yourself on the record to begin. Good morning, your honors. Robert Kirby on behalf of Appellees Seaver and Toga. Good morning, your honors. Your honors, I'd like to begin where we left off, and that's on the issue of termination and whether the termination rights that Messrs. Seaver and Toga specifically and expressly bargained for were properly exercised, because I think the record is clear that they were properly exercised under the plain language of the agreement. Counsel, your brother didn't seem seriously to contest that. What he's now saying, as I understand him, is that even if that's so, he can still maintain an action for damages for a breach that occurred prior to the termination. And that's the argument I'd like you to respond to. That's the argument that I think appears in this case for the first time in the reply brief. I don't believe was made below or in the opening brief. And I think it's got it's kind of presented chicken or egg problem for the court. What he says is that once unity, the underlying corporation whose stock was going to be transferred as part of this contemplated transaction, once unity said it was OK for a transaction to proceed, that was it. That eliminated, according to what Mr. Piedra is arguing, that somehow eliminated Seaver's and Toga's right to terminate. The problem with that, Your Honor, is that that's not what the agreement says. And it's mistaken in two respects. Number one, in Section 2.1, which vests the termination right, it vests that right in Seaver and Toga after the expiration of seven days, period. Once seven days have elapsed, they can terminate for any reason. Whether unity later belatedly agrees to approve the transaction or not, it's too late once seven days have elapsed. That's problem number one with their argument. Problem number two with their argument is, and Mr. Piedra alluded to this at the end of his argument this morning, is he argues, to Your Honors, that once unity approved the concept of this transaction, as he put it, all conditions precedent were met. And that thereby obligated Seaver and Toga to close. Well, that's not what Section 2.1 says, nor is it consistent with what Section 3.3 says. Mr. Kirby, you're backing yourself into a corner with your second argument. The way you argued this to the district court and you presented the question quite directly to the district court, there are two independent ways of resolving this question on summary judgment. The first has to do with contract formation. The second, quite independently, is that the termination rights were properly exercised, and that ends the matter. And that is the way the issue was framed to the district court. The district court actually ruled in your favor on both of those claims. You were quite clear that the termination claim was an independent basis to resolve the action. It was not until the reply brief that the appellant suggested to us for the first time that, no, in fact, the termination argument is not an independent basis, that you nonetheless have a breach of contract action which survives at least for damages up to the date of termination. So you have a very good waiver argument that I thought you were adhering to in your briefing. Your Honor, two things. Number one, we actually argued three independent things below to Judge Stern. The third, which he did not read, and I just lost the court. Your Honor, can you still hear me? The court went dark for a moment. Yeah, hi. Mr. Kirby, if I may, this is Dan Toomey. You did break up a little bit for us. Before you go back, can we just double-check? Can you just mute your camera on and off and mute your microphone on and off? We'll just check it real quick. Go ahead and come back. Am I back? You are back. If you want to try that again, I apologize, Judge, for interrupting, but why don't you go ahead and wheel yourself back a minute or two and then just start again. No, Mr. Toomey. Oh, I'm sorry. The only thing we need to hear is what was your third point that you say the district court didn't reach. The third point that we argued below, Your Honor, was that the condition precedents set forth in Section 3 of the agreement were expressly not met, and Judge Stearns simply decided we need not reach that argument because he reached contract formation and termination. Okay, thank you. Do you have anything else you'd like to add? Well, I'd like not to back myself into a corner, and my overarching objective is not to talk you into not affirming Judge Stearns, so I will say just one last thing on this notion that Mr. Piedra raised this morning, that once Unity approved the concept of a transfer, that somehow foreclosed Seaver and Toga from terminating. Number one, that's not what Section 2.1 says. It vests an absolute and unilateral right in Seaver and Toga to terminate once seven business days have elapsed, and 47 business days have elapsed in this case. That's number one. Number two, the notion that Unity's approval conceptually of a transfer somehow satisfies Section 3 is simply at odds with the plain language of Article 3. Article 3 says that Unity must approve a transfer of the transferred shares, quote, on the terms and conditions hereof, close quote, and the evidence is undisputed that that never happened. Unity never signed the stock transfer agreement. They instead negotiated with FinCite a wholly new agreement that contained wholly new terms, and what Mr. Piedra would like to do is try to create an issue of material fact on whether this clause or that clause is material such that we need to remand. Okay, thank you, Mr. Kirby. We understand. Thank you. Thank you, Your Honor. Thank you.  Attorney Piedra, please go ahead and reintroduce yourself on the record for your two-minute rebuttal. Thank you, Your Honor. It's Attorney Israel Piedra for the appellant. Your Honor, I don't have much else to add. I see the court's struggling with the waiver piece of things. Again, I will just reiterate I believe that the points made in pages 40, 39, 40, and 41 of our opening brief do subsume the argument before the court. I'm happy to answer any other questions the court may have. I have no other questions. Do my colleagues? None from me. No. Thank you, Mr. Piedra. Thank you, Your Honor. Thank you. At this time, that concludes the argument. Attorney Piedra and Attorney Kirby can disconnect from the hearing.